**CHADBOURNE & PARKE LLP**
Attorneys for the Petitioners
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100
Howard Seife, Esq.
Andrew Rosenblatt, Esq.
Eric Daucher, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------- x
In re                                                            :
                                                                 :
PIONEER FREIGHT FUTURES COMPANY                                  :   Chapter 15
LIMITED,                                                         :
                                                                 :
                                                                 :
Debtor in a Foreign Proceeding.                                  :   Case No. 13-
---------------------------------------------------------------- x
```

## VERIFIED PETITION UNDER CHAPTER 15 FOR
## RECOGNITION OF A FOREIGN MAIN PROCEEDING

Mark Richard Byers and Mark McDonald, in their capacity as joint liquidators (the "Petitioners") of Pioneer Freight Futures Company Limited (the "Company") and as duly authorized foreign representatives as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), through their United States counsel, Chadbourne & Parke LLP, respectfully submit this verified petition seeking recognition of a foreign main proceeding. In support thereof, the Petitioners respectfully state as follows:

### PRELIMINARY STATEMENT

1.      By this Chapter 15 verified petition and the form petition filed herewith (together, the "Petition"), the Petitioners seek recognition of the Company's liquidation proceeding (the "BVI Proceeding") pending before the Commercial Division of the High Court of Justice, British Virgin Islands, Eastern Caribbean Supreme Court (the "BVI Court").

2.      The Petitioners commenced this Chapter 15 case by filing the Petition contemporaneously with, and accompanied by, all certifications, statements, lists and documents required under Chapter 15 and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  As set forth below and in (i) the Declaration of Scott Cruickshank, BVI legal counsel to the Petitioners dated June 28, 2013 (the "Cruickshank Declaration"), and (ii) the Statement of Foreign Representative as required by section 1515(c) of the Bankruptcy Code accompanying the Petition:

(a)      a foreign proceeding respecting the Company was duly commenced in the British Virgin Islands (the "BVI");

(b)      the Company is incorporated in the BVI and its registered address is c/o Tricor Services (BVI) Ltd., Palm Grove House, PO Box 3340, Road Town, Tortola VG1110, BVI;

(c)      the Company, through the Petitioners, carries out nontransitory economic activity in the BVI;

(d)      the Petitioners are duly authorized to serve as foreign representatives and to petition for relief under Chapter 15 of the Bankruptcy Code in connection with the liquidation proceeding respecting the Company pending in the BVI; and

(e)      the Petitioners are entitled to the relief requested.

3.      On February 15, 2010, the BVI Court issued an order (the "February 15 Order"), a copy of which is attached hereto as Exhibit "A," placing the Company into liquidation and appointing the Petitioners as the Company's BVI Joint Liquidators (as defined below).  In that role, the Petitioners are responsible for, *inter alia*, managing the Company, investigating causes of action that the Company or its creditors may possess and prosecuting, settling or otherwise resolving such causes of action as they deem appropriate and, if necessary, as sanctioned by the Liquidation Committee (as defined below).

CPAM: 5501035.13

4.      As discussed in greater detail below, the Petitioners currently possess incomplete information regarding the Company's financial history, but are investigating the possibility that the Company's assets were transferred through, or are currently located in, the United States.  In furtherance of that investigation, the Petitioners seek an order granting recognition of the BVI Proceeding substantially in the form of the proposed Order Granting Recognition of a Foreign Main Proceeding attached hereto as Exhibit "B" (the "Proposed Order").  Recognition will allow the Petitioners to seek broad discovery concerning the Company's assets and affairs.

5.      The Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code.  Moreover, the relief requested by the Petitioners is well within the scope of Chapter 15 of the Bankruptcy Code, which authorizes this Court to (i) recognize a "foreign proceeding" upon the proper commencement of a case under Chapter 15 by a "foreign representative" and (ii) grant assistance in the United States to such foreign representative in connection with the foreign proceeding.  Based on the foregoing and the reasons described herein, the Petitioners are entitled to an order granting recognition to the BVI Proceeding under Chapter 15 of the Bankruptcy Code.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, Loretta C.J.), dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

7.      Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

3

## BACKGROUND

### I.    The Nature of the Company's Business Prior to its Liquidation

8.      The Company was incorporated on March 10, 2006 in the BVI as a limited liability company.

9.      The Company was established for the sole purpose of trading forward freight agreements ("FFAs"), a type of forward contract that allows market participants to hedge against changes in the price of shipping dry bulk goods.  The Company's FFA trades were carried out through bilateral agreements entered into on the Forward Freight Agreement Brokers Association 2007 ("FFABA") Terms and using the International Swap Derivatives Association Inc. ("ISDA") Master Agreement.  The Company was one of twenty-five to thirty significant participants in the global FFA market.

10.     The Company's operations were primarily carried out in Hong Kong and Beijing, China by a very limited number of individuals.  The Company had no salaried or contract employees or office premises (other than its registered office in the BVI).  Instead, the limited number of individuals who performed work for the Company were employed by an affiliate company within a wider group of companies controlled by the Company's parent company, Pioneer Iron and Steel Group ("PSG").  The Company's "employees" worked out of PSG's offices in Hong Kong and Beijing or remotely on laptop computers.

11.     The majority of the Company's FFA trades were placed through brokers in the United Kingdom and were subject to English law and the jurisdiction of the High Court of England and Wales (the "English Court") under the FFABA form and the ISDA Master Agreement.  The Company's main operating bank account was with Bank of America ("BoA") in the United Kingdom.  The Company also held bank accounts with Standard Chartered Bank in Hong Kong and ANZ Bank in mainland China.  However, the vast majority of the Company's

transactions appear to have been processed through the BoA account. In addition, the Company operated a number of margin accounts with Cargill, Louis Dreyfus, MF Global, Macquarie, Morgan Stanley, NOS and UBS.

## II.    Pre-Liquidation Management of the Company

12.    Prior to its winding up, the Company was primarily managed by five individuals. First, Diana Chen, who is the ultimate owner of the Company, acted as the Company's chief executive officer and statutory director from March 10, 2006 through May 29, 2009. Second, Eddie Chen was the Company's "back office manager" and was responsible for coordinating the Company's FFA contracts, cash flow and management accounts. Third, Fiona Li acted as the Company's legal advisor. Finally, Steve Pan and Jeffrey Mckenzie were the Company's "front office" traders. Mr. Mckenzie also served as a statutory director of the Company from March 10, 2006 through February 8, 2007.[1]

## III.    Events Leading to the Company's Liquidations

13.    The Company's financial difficulties started to arise in the fourth quarter of 2008 as a result of it taking a series of "long" FFA positions. The Company entered into so many FFA contracts during this period that it was unable to satisfy its accruing liabilities as they matured.

14.    The Company's management raised additional financing and took other steps to secure the Company's future. Despite these efforts, the Company remained unable to satisfy its accruing liabilities and, as a consequence, became embroiled in numerous disputes with FFA contract counterparties. These disputes exacerbated the Company's financial problems by forcing the Company to incur substantial legal costs. Moreover, a number of the Company's

---

[1]    At the time of the Petitioners' appointment, the Company's sole statutory director was Mr. Shao Qui Gan, who was appointed to that position on May 29, 2009 following Ms. Chen's departure. However, based on interviews with him, the Petitioners determined that Mr. Gan has no material knowledge of the Company's business.

5

largest FFA contract debtors withheld payments owed to the Company while disputes remained unresolved.

15.     As a result of the Company's deteriorating financial condition, on December 7, 2009, MAP Marine Ltd, one of the Company's creditors, filed a petition in the BVI to wind up the Company.

### IV.     The Appointment of the Liquidators in the BVI and the UK

16.     Following the presentation of the winding up petition by MAP Marine Ltd, the Company sought legal advice regarding the appropriate steps to protect the Company's creditors. The Company was advised that the best course of action was to obtain the appointment of provisional liquidators for the Company.

17.     The Company was advised that the BVI was the most appropriate jurisdiction for the primary appointment of liquidators for the Company given the fact that the Company is incorporated in the BVI.  Moreover, the fact that MAP Marine Ltd filed its winding up petition in the BVI indicated that the Company's creditors considered the BVI to be an appropriate venue.

18.     Nevertheless, in order to avoid the risk that the Company's debt would be traded in the secondary debt market, which might create rights of set off under BVI and English law and thereby reduce the Company's assets to the detriment of creditors, the Company was advised that it was also appropriate to seek the appointment of liquidators in England and Wales (several assignments of the Company debt, totaling approximately US$45 million, had already occurred by mid-December 2009).[2]   Additionally, the commencement of a liquidation proceeding in

---

[2]     BVI insolvency law, unlike English insolvency law (or the U.S. Bankruptcy Code), does not prevent parties from manufacturing setoff by trading debt after an insolvency proceeding has commenced.

CPAM: 5501035.13

England would facilitate the prosecution of collection proceedings in England against the Company's FFA debtors, whose contracts were primarily governed by English law.

19.    Accordingly, at a meeting of the Company's shareholders on December 14, 2009, it was resolved that: (1) by reason of its inability to pay its debts as they came due, the Company should apply to the BVI Court for a winding up of the Company and in the interim the appointment of joint provisional liquidators over the Company pursuant to the BVI Insolvency Act 2003 (the "BVI Act"); and, (2) as soon as possible thereafter, the Company should apply to the English Court for a winding up order and the appointment of joint provisional liquidators over the Company's assets in that jurisdiction pursuant to the United Kingdom's Insolvency Act 1986 (the "English Act").

20.    On December 17, 2009, the BVI Court appointed Mark Richard Byers, Mark McDonald and Andrew Hosking as joint provisional liquidators of the Company in the BVI pursuant to the BVI Act.

21.    On December 18, 2009, the English Court appointed Mark Richard Byers and Andrew Hosking as joint provisional liquidators of the Company in England and Wales pursuant to the English Act.

22.    On December 21, 2009, all creditors of the Company known to the Petitioners were notified of the Company's winding up petitions by e-mail and mail.  On January 12, 2010, supplemental notices were sent out to additional creditors identified by the Company.  In addition, information regarding the appointment of the Petitioners was published in the BVI Gazette, the London Gazette and Lloyds List.  Notice of the Petitioners' appointment was also disclosed on a dedicated website, the existence of which was advertised in Trade Winds and Lloyds List (trade publications relevant to the freight market).

CPAM: 5501035.13

23.     On February 15, 2010, the BVI Court issued the February 15 Order, placing the Company into formal liquidation and appointing Mark Richard Byers, Mark McDonald and Andrew Hosking as the joint liquidators of the Company in the BVI (the "BVI Joint Liquidators").

24.     On March 3, 2010, the English Court issued an order winding up the Company (the "English Proceeding").   Immediately thereafter, the Secretary of State for Business, Innovation and Skills appointed Mark Richard Byers and Andrew Hosking as joint liquidators of the Company in England and Wales (the "English Joint Liquidators" and, collectively with the BVI Joint Liquidators, the "Joint Liquidators").[3]

**V.     Division of Responsibilities between the BVI and UK Liquidations**

25.     Although Mark Byers acts as the Company's Joint Liquidator in both the BVI and England, the roles of the BVI Joint Liquidators and the English Joint Liquidators are clearly divided.

26.     As discussed above, the English Proceeding has two purposes: (a) to prevent the Company's creditors from manufacturing post-winding up rights of set off against the Company; and (b) to enable the English Joint Liquidators to more easily commence collection actions against the Company's FFA contract debtors.   Accordingly, the English Joint Liquidators have been actively involved in litigation (and related settlement negotiations) to recover amounts owed to the Company under its FFA contacts.

27.     In contrast, the BVI Proceeding is intended to complete all other aspects of the Company's winding up, both in the BVI and globally.   Accordingly, the Petitioners, in their

---

[3]     On June 30, 2011, Andrew Hosking resigned from the firm Grant Thornton UK LLP.  On May 22, 2012, Stephen Akers was appointed as an additional English Joint Liquidator to replace Andrew Hosking.  No replacement liquidator was appointed to fill Mr. Hosking's role as one of the BVI Joint Liquidators.

CPAM: 5501035.13

capacities as BVI Joint Liquidators, have been responsible for, among other things: (a) all creditor claim review, adjudication and settlement activities; (b) investigating potential preference suits and similar claw-back actions; (c) considering distributions to creditors (when appropriate); (d) filing and serving notices and reports to the BVI Court, as appropriate; and (e) obtaining legal advice in relation to investigative work.  For example, and as explained in greater detail below, in 2011, the BVI Joint Liquidators successfully applied for the release and return of funds belonging to the Company that were being held in Switzerland.

28.    Shortly after the appointment of the Joint Liquidators, a liquidation committee, which currently consists of five of the Company's creditors, was formed in the English Proceeding (the "Liquidation Committee").  The Liquidation Committee is responsible for, *inter alia*, (a) sanctioning (or declining to sanction, as appropriate) the commencement of litigation by the Company against its debtors and (b) keeping the Company's creditors up to date with the status of collection actions.[4]  Because creditors' committees formed in BVI liquidations lack the power to sanction certain actions, it was agreed that no BVI equivalent of the Liquidation Committee would be established.  Nevertheless, the English Liquidation Committee fulfils the role normally served by a BVI creditors' committee (i.e., providing a forum through which the Joint Liquidators can conveniently disseminate information to creditors).  Moreover, the BVI Court has recognized the Liquidation Committee and agreed that sanctions issued by the Liquidation Committee will satisfy the sanction requirements of BVI insolvency law.   In particular, on May 30, 2012, at the ninth meeting of the Liquidation Committee, the Liquidation Committee granted the Petitioners sanction to commence this Chapter 15 case.

---

[4]    Although the English Act permits the English Joint Liquidators to seek sanction for commencing litigation directly from the English Court, due to the high number of sanction requests that were anticipated to be necessary, the formation of a liquidation committee was deemed more appropriate.

9

29.    During the initial phase of the Company's winding up, which lasted from the time of the appointments of the Company's respective joint provisional liquidators on December 17 and 18, 2009 until approximately May 2012, the English Proceeding was significantly more active than the BVI Proceeding.   During that time period, the Joint Liquidators were predominantly focused on recovering amounts owed by the Company's FFA debtors, which, as discussed above, was occurring in the English Proceeding.   After May 2012, however, work related to recovering amounts owed by the Company's FFA debtors decreased and there was a significant shift of the work to the BVI Proceeding as the BVI Joint Liquidators and their staff prepared to make an interim distribution to the Company's creditors.   The BVI Proceeding is therefore currently more active than the English Proceeding.

## VI.    Key Developments in the Liquidations

### A.    Company Records

30.    The Company provided the Joint Liquidators with only an incomplete set of the Company's books and records.   However, the Joint Liquidators have gone to significant lengths to obtain bank statements, margin accounts and broker documents relating to the Company's business, including by threatening to make formal applications to the English Court under the English Act for orders that such documents be produced.   Additionally, in July 2012, the Joint Liquidators entered into an information sharing protocol with PSG to obtain further information regarding the Company.[5]

31.    As a result of these efforts, the Joint Liquidators now believe that they are in possession of the vast majority of the Company's bank statements.   However, very little of the Company's books and records have been recovered to date.   The Joint Liquidators continue to

---

[5]    Pioneer Iron and Steel Group Limited is also currently subject to formal insolvency proceedings in the BVI.

CPAM: 5501035.13

explore all options available that would allow them to gain a greater understanding of the Company's affairs prior to their appointment.

B.       Recoveries through the English Proceeding

32.      The English Joint Liquidators have been responsible for pursuing the Company's FFA contract debtors through the English Proceeding.  Because of the contractual nature of these debts and the refusal of counterparties to settle debts owed to the Company, the English Joint Liquidators have commenced a number of legal proceedings to seek repayment.  As a result of these actions (and related settlements) the English Joint Liquidators have recovered approximately US$33.5 million (including the Swiss realizations discussed below).  Additionally, a number of recovery actions, with an aggregate potential value of approximately US$33 million, remain pending before the English Court.  Finally, the English Joint Liquidators are in the process of commencing legal proceedings against a number of the Company's remaining debtors.

C.       Recoveries Now Held by the BVI Estate

33.      Pursuant to the provisions of the UK's Insolvency Regulations 1994, all recoveries of amounts owed to the Company made by the English Joint Liquidators were initially paid into a bank account operated in England and Wales by the UK's Insolvency Service (the "ISA").

34.      On July 29, 2011, the Joint Liquidators obtained an order from the English Court stating that the insolvency laws of the BVI apply to the receipt of all assets by the English Joint Liquidators.[6]  Accordingly, from and after July 29, 2011, all amounts recovered through the

---

[6]      The purpose behind seeking such an order was to avoid the need for the English Joint Liquidators to pay assets recovered in the English Proceeding into the ISA.  This order avoided what would otherwise be a requirement to convert U.S. dollar realizations into pounds Sterling for payment into the ISA.  Claims against the Company will be made

English Proceeding are held in a U.S. dollar-denominated account controlled by the BVI Joint

Liquidators rather than being paid into the ISA. Additionally, recoveries that occurred prior to

July 29, 2011 were released from the ISA and are now also held in the BVI Joint Liquidators'

U.S. dollar-denominated account.

**VII.   Swiss Recognition of the BVI Proceeding**

35.     In March 2010, the BVI Joint Liquidators sought and obtained recognition of the

BVI Proceeding in Switzerland in order to obtain the release of approximately US$9.5 million

owed to the Company by a Swiss debtor, which funds were frozen in the Swiss Debt &

Collection Office in Lugano, Switzerland. Pursuant to Swiss law, recognition was first sought

and obtained from the Swiss Exequatur. Thereafter, the BVI Joint Liquidators commenced a

"mini bankruptcy," after which the Company's funds held in the Swiss Debt & Collection Office

were transferred to the Swiss Bankruptcy Office and the freezing injunction was released.[7]

<b>STATUTORY BASIS FOR RELIEF REQUESTED</b>

36.     The statutory predicates for the relief requested herein are sections 1507, 1515,

1517 and 1520 of the Bankruptcy Code.

37.     Chapter 15 of the Bankruptcy Code was specifically designed to assist foreign

representatives such as the Petitioners in the performance of their duties. One of the primary

objectives of Chapter 15 is the "fair and efficient administration of cross-border insolvencies that

---

through the BVI Proceeding, and distributions will be paid by the BVI Joint Liquidators in
US dollars. Eliminating the need to convert all recoveries into pounds sterling and then back
into U.S. dollars for distribution purposes eliminated the risk of potential exchange rate
losses.

[7]   A true and correct copy of the order of the Swiss chamber of debt collection and bankruptcy
of the court of appeal recognizing the BVI Proceeding is attached hereto as Exhibit "C." A
true and correct English translation of the order is attached hereto as Exhibit "D."

12

protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).

38.     The Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code.  Moreover, the relief requested herein is necessary and is appropriate under Chapter 15 of the Bankruptcy Code.  Granting recognition to the BVI Proceeding and the relief requested is consistent with the goals of international cooperation and assistance to foreign courts which is embodied in Chapter 15 of the Bankruptcy Code.

39.     The relief sought herein is well within the scope of Chapter 15 and the criteria for recognition under Chapter 15 are satisfied under the facts of this case.  Relief under Chapter 15 of the Bankruptcy Code is necessary to ensure that the Company is liquidated in an orderly manner and to maximize the value to be distributed to all creditors and parties in interest under the auspices of the BVI Court in the BVI Proceeding.

## RELIEF REQUESTED

40.     The Petitioners, as the foreign representatives of the Company, seek entry of the Proposed Order granting the following relief:

(a)     recognition of the BVI Proceeding as a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code;

(b)     all relief afforded a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code; and

(c)     such other and further relief as this Court may deem just and proper.[8]

---

[8]     At this time, the Petitioners are not seeking either provisional relief under section 1519 or discretionary relief under section 1521.  However, should this Court determine that the BVI Proceeding is not a foreign main proceeding, the Petitioners respectfully request that the Court entertain the Petition as one for recognition of, and relief respecting, a foreign nonmain proceeding, as defined in section 1502(5) of the Bankruptcy Code, as the Company has an establishment, as defined in section 1502(2) of the Bankruptcy Code, in the BVI.  If the BVI Proceeding is recognized as a foreign nonmain proceeding, the Petitioners request relief under section 1521 that tracks the relief granted automatically under section 1520 upon

CPAM: 5501035.13

41.     The Petitioners believe that the BVI Proceeding, as supplemented by the English Proceeding and with the assistance of this Court, offers the best means of liquidating the Company and achieving a global, equitable resolution of the Company's liabilities.  Recognition of the BVI Proceeding as a foreign main proceeding under Chapter 15 is critical to achieving this goal for several reasons.  First, the Petitioners are tasked with taking possession of and realizing the assets of the Company.  However, due to the lack of documents presently available to the Petitioners regarding the Company's assets, it is unclear whether, and to what extent, the Company has assets in the United States.  Chapter 15 relief will allow the Petitioners to seek discovery that may be essential in determining whether such assets exist and whether it would be appropriate to commence recovery actions.  Second, if and when the Petitioners determine that such recovery actions should be brought in the United States for the benefit of the Company's creditors, Chapter 15 recognition of the BVI Proceeding would be necessary to allow the Petitioners access to United States courts pursuant to section 1509(b) of the Bankruptcy Code. Finally, Chapter 15 relief will enjoin any actions against the Company or any assets it may have in the United States.  If such actions are not stayed, the orderly liquidation of the Company may be jeopardized and the Petitioners may be forced to expend resources unnecessarily to defend actions brought in the United States.  Based on the foregoing, the Petitioners concluded that relief under Chapter 15 is appropriate and necessary to achieve the goals of the BVI Proceeding and therefore commenced this case.

---

recognition of a foreign main proceeding.  In that event, the Petitioners are prepared to demonstrate that they meet the appropriate standards for such relief, including satisfying the traditional standards for obtaining injunctive relief.

14

**NOTICE**

42.     Pursuant to section 1517(c) of the Bankruptcy Code, a petition for recognition shall be decided at the "earliest possible time."   By Motion for Order Limiting Notice, Scheduling Hearing, and Specifying the Form and Manner of Service of Notice, which is being filed contemporaneously herewith, the Petitioners have requested, among other things, that this Court set the date for the hearing (the "Hearing") on recognition and relief at the earliest possible time after August 16, 2013.

43.     As soon as the Hearing is scheduled, the Petitioners will cause a copy of: (i) the Chapter 15 form petition; (ii) this Verified Petition; and (iii) the Notice of Filing and Hearing on Petition under Chapter 15 of the United States Bankruptcy Code (the "Notice"), to be served upon (a) the Company and (b) the U.S. Trustee.  Further, the Petitioners will cause the Notice to be published in the Financial Times (which is circulated worldwide) and The New York Times (national edition).[9]

**CONCLUSION**

WHEREFORE, the Petitioners respectfully request that this Court grant the relief requested and such other and further relief as may be just and proper.

---

[9]  Copies of all other pleadings will be provided upon request to the Petitioners' counsel.  These pleadings include: (i) the Cruickshank Declaration; (ii) the Statement of Foreign Representative required pursuant to 11 U.S.C. §1515; (iii) the Corporate Ownership Statement required by Bankruptcy Rule 7007.1; and (iv) the Memorandum of Law in Support of the Verified Petition.

15

Dated: New York, New York
      July 16, 2013

CHADBOURNE & PARKE LLP

By: */s/ Howard Seife*        
      Howard Seife, Esq.
      Andrew Rosenblatt, Esq.
      Members of the Firm
      30 Rockefeller Plaza
      New York, New York 10112
      Telephone: (212) 408-5100

      *Attorneys for the Petitioners*

16

**CHADBOURNE & PARKE LLP**
Attorneys for the Petitioners
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100
Howard Seife, Esq.
Andrew Rosenblatt, Esq.
Eric Daucher, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------- x
In re                                                             :
                                                                  :
PIONEER FREIGHT FUTURES COMPANY                                   :  Chapter 15
LIMITED,                                                          :
                                                                  :
                                                                  :
Debtor in a Foreign Proceeding.                                   :  Case No. 13-
----------------------------------------------------------------- x
```

I, Mark Richard Byers, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am one of the joint liquidators of Pioneer Freight Futures Company Limited. I have the full authority to verify this petition on behalf of the joint liquidators.

I have read the foregoing petition, and I am informed and believe that the factual allegations contained therein are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of July, 2013 in London, England

*/s/ Mark Richard Byers*
Mark Richard Byers, a Joint Liquidator of Pioneer Freight Futures Company Limited

17