**CHADBOURNE & PARKE LLP**
Attorneys for the Petitioners
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100
Howard Seife, Esq.
Andrew Rosenblatt, Esq.
Eric Daucher, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re                                                            :
                                                                 :
PIONEER FREIGHT FUTURES COMPANY          : Chapter 15
LIMITED,                                                         :
                                                                 :
                                                                 :
Debtor in a Foreign Proceeding.                  : Case No. 13-
---------------------------------------------------------------- x

## DECLARATION OF SCOTT CRUICKSHANK

Scott Cruickshank, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America as follows:

1.  I am the Managing Partner and the head of the litigation department of Lennox Paton's office in the British Virgin Islands (the "BVI"). I am BVI counsel to Mark Richard Byers and Mark McDonald, as Joint Liquidators (together, the "Petitioners") of Pioneer Freight Futures Company Limited (the "Company") with respect to the BVI Proceeding (as defined below) and generally on issues related to BVI law.[1]

2.  I submit this declaration in support of the Verified Petition filed by the Petitioners, the duly authorized foreign representatives of the Company, seeking recognition of

---
[1] All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Verified Petition under Chapter 15 for Recognition of a Foreign Main Proceeding filed contemporaneously herewith in the above-captioned case (the "Verified Petition").

the Company's liquidation proceeding in the BVI (the "BVI Proceeding") pending before the Commercial Division of the High Court of Justice, British Virgin Islands, Eastern Caribbean Supreme Court (the "BVI Court").

3. This declaration is comprised of both statements of legal opinion and statements of fact. Where the matters stated in this declaration are statements of legal opinion, such statements represent my view of BVI law as a practicing lawyer.

4. Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information supplied to me by or on behalf of the Petitioners and are true to the best of my knowledge, information and belief.

## I.  Professional Background

5. I am a graduate of the University of Glasgow in Scotland where I obtained: (1) a Bachelor of Laws degree (with Honors in Commercial Law) in 1995; and (2) a Diploma in Legal Practice in 1996.

6. In 1996, I commenced a two year solicitor traineeship with Shepherd and Wedderburn WS in Edinburgh, Scotland. I qualified as a Scottish solicitor in or about September 1998.

7. I then decided that I wanted to pursue a career at the Scots Bar. I completed a one year Bar apprenticeship with Brodies WS in Edinburgh, Scotland, prior to commencing my pupilage at the Scots Bar in about September 1999. Following pupilage, I was called to the Scots Bar in July 2000. I practiced as a corporate and commercial litigator until about February 2008 when I relocated to the BVI. I initially worked as a senior litigator with Ogier in the BVI. I was called to the Bar of the Eastern Caribbean Supreme Court in about February 2008 and am

2

admitted with full audience rights in the BVI. In September 2009, I commenced my present position with Lennox Paton.

8. In the last 5 years I have regularly litigated before the first instance courts of the BVI, and, on occasions, the Eastern Caribbean Court of Appeal and the Privy Council (the final appellate court in London for the Eastern Caribbean Supreme Court).

9. My practice in the BVI primarily involves insolvency and litigation involving offshore companies, investment funds and trusts. Much of the insolvency work I have been involved in since 2008 has involved cross-border proceedings. I am a Fellow of INSOL International being the first and only BVI practitioner to have successfully completed the Global Insolvency Practice Course. I am accordingly reasonably familiar with the provisions of Chapter 15 ("Chapter 15") of title 11 of the United States Code (as amended) (the "Bankruptcy Code").

## II.    The BVI Proceeding: Procedural Background

10. As stated above, I am familiar with the BVI Proceeding and the law governing that proceeding.

11. The Company is incorporated in the BVI. The business of the Company was trading in, and settlement of, Forward Freight Agreements.

12. At a meeting of the Company's shareholders on December 14, 2009, it was resolved that: (1) by reason of its inability to pay its debts as they come due the Company should apply to the BVI Court for a winding up of the Company and in the interim the appointment of joint provisional liquidators over the Company pursuant to the BVI Insolvency Act 2003 (the "BVI Act") (true and correct excerpts of which are attached hereto as Exhibit "A"); and (2) as soon as possible thereafter the Company should apply for similar relief in the High Court of Justice in England and Wales (the "English Court") for a winding up order and the appointment of joint provisional liquidators over the Company's assets in that jurisdiction.

3

13. On December 17, 2009, Mark McDonald, Mark Richard Byers and Andrew Hosking were appointed joint provisional liquidators of the Company by the BVI Court.

14. On December, 18, 2009, the Company acting through Mark McDonald, Mark Richard Byers and Andrew Hosking (in their capacity as joint provisional liquidators of the Company in the BVI) made an application to the English Court for the appointment of Mark Richard Byers and Andrew Hosking as joint provisional liquidators in respect of the Company in England and Wales.

15. By order dated February 15, 2010 (the "February 15 Order"), the Company was put into formal liquidation by the BVI Court. A true and correct copy of the February 15 Order is attached to the Verified Petition as Exhibit "A." Pursuant to the February 15 Order, Mark McDonald, Mark Richard Byers and Andrew Hosking were appointed joint liquidators of the Company (the "BVI Joint Liquidators").

16. Pursuant to paragraph 2(d) of the February 15 Order, the Petitioners, in their capacities as BVI Joint Liquidators, are authorized by the BVI Court to seek recognition from this Court of the BVI Proceeding as a foreign main proceeding pursuant to Chapter 15 of the Bankruptcy Code. Section 472 of the BVI Act provides that: "[t]he Court may, on the application of an insolvency officer, authorize him to act in a foreign country on behalf of a Virgin Islands insolvency proceeding as permitted by the applicable foreign law." However, such authorization is caveated by paragraph 4 of the February 15 Order, which provides that in the event that the Company is wound up by an order of the English Court, the exercise of this power must be duly sanctioned under the UK Insolvency Act and Insolvency Rules 1986 by either the English Court or the Liquidation Committee. The Petitioners were granted sanction by

4

a liquidation committee on May 30, 2012, which, as described in the Verified Petition, was formed in connection with the Company's English liquidation proceedings.

17. Pursuant to the February 15 Order, the Petitioners are duly authorized to act as the foreign representatives of the Company and are responsible for all aspects of the Company's business. The February 15 Order grants the Petitioners all of the powers set forth in Schedule 2 to the BVI Act, including, but not limited to, the following:

(a) to pay any class of creditors in full;

(b) to make a compromise, or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the Company, whether present or future, certain or contingent, ascertained or not;

(c) to compromise, on such terms as may be agreed;

    (i) calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the Company and any person; and

    (ii) questions in any way relating to or affecting the assets or the liquidation of the Company;

and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it;

(d) to commence, continue, discontinue, or defend any action or other legal proceedings in the name and on behalf of the Company in the BVI or elsewhere;

(e) to carry on the business of the Company so far as may be necessary for its beneficial liquidation;

(f) to sell or otherwise dispose of property of the Company;

(g) to do all acts and execute, in the name and on behalf of the Company, any deeds, receipts or other document;

(h) to use the Company's seal;

(i) to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his

5

estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors;

(j)   to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the Company with the same effect with respect to the Company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the Company in the course of its business;

(k)   to borrow money, whether on the security of the assets of the Company or otherwise;

(l)   to take out in their official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate, that cannot conveniently be done in the name of the Company;

(m)   to take out letters of administration to be due to the Petitioners themselves;

(n)   to call meetings of creditors or members for;

    (i)   the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;

    (ii)  the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or

    (iii) such other purpose connected with the liquidation as the Petitioners consider fit;

(o)   to appoint a solicitor, accountant or professionally qualified person to assist them in the performance of their duties;

(p)   to appoint an agent to do any business that the liquidators are unable to do themselves, or which can be more conveniently done by an agent; and

(q)   to do all things necessary or incidental to the above powers or functions and all functions and power of the Petitioners may be performed or exercised by any one of them.

See, e.g., February 15 Order at ¶ 2.

CPAM: 5501047.7

18.    The powers set out at (a) to (d) above are subject to sanction by either the English Court or the Liquidation Committee (as discussed above). The Petitioners were granted sanction in respect of these powers by the Liquidation Committee on May 30, 2012.

19.    The February 15 Order permits the Petitioners to exercise any of the powers listed at (e) to (q) above without further sanction of the Court. See, e.g., February 15 Order at ¶ 4 (citing BVI Act § 186 ("The Court may provide that certain powers may only be exercised with the sanction of the Court")).

### III.    The Law Governing the BVI Proceeding

20.    As set out above, the BVI Proceeding was commenced pursuant to the BVI Act. This is the governing law of corporate insolvency in the BVI. The enacting legislation describes the BVI Act as: "[a]n Act to reform the law relating to the insolvency of companies and foreign companies . . . and to provide, in particular, for a mechanism for insolvent persons to enter into arrangement with their creditors, an administration procedure for companies, the receivership of companies and foreign companies, the liquidation of companies . . ." See Enacting Statement of BVI Act. Key insolvency procedures provided for in the BVI Act include liquidation, creditor arrangement, receiverships and administrative receivership. As a general statement, the BVI Act contains provisions broadly similar to those contained in the insolvency laws of England. Fundamentally, the key principle of BVI insolvency is the *pari passu* principle, closely following the English law principles.

21.    Under the BVI Act, court appointed liquidators are officers of the BVI Court. See BVI Act § 184 (providing that a liquidator in a BVI liquidation proceeding acts as an officer of the BVI Court). Upon appointment, the Petitioners obtained, among other things, custody and control of the Company's assets, and the power to compromise claims, commence litigation and to dispose of property. See BVI Act §§ 175, 186.

22. The BVI Court exercises close supervision of the BVI Proceeding and the Petitioners. The judge currently assigned to these matters is the Honorable Justice Edward Bannister Q.C., the presiding judge of the Commercial Division of the Eastern Caribbean Supreme Court, which is located on the Island of Tortola, in the BVI. As set out above, pursuant to the BVI Act, if liquidators wish to prosecute, continue or defend claims outside of the BVI, they must first seek sanction of the BVI Court. In the present case such consent has been provided in the February 15 Order and by the Liquidation Committee. In practice, this means that not only is the management of the Company being conducted from within the BVI by the Petitioners, but that key aspects of that management, and in particular decisions on the prosecution of claims, is subject to court supervision in the BVI.

23. The BVI Proceeding is not for the benefit of any single creditor; rather it operates to resolve and determine the rights of all claimants and stakeholders, i.e., the creditor body as a whole, vis-à-vis the Company. See, e.g., BVI Act § 207 (providing for the payment of classes of admitted claims and expenses in accordance with the statutory priorities, and if the amount available for such claims is insufficient to pay claims in full, directing their ratable payment by class). Any person or entity with a claim (defined under section 11(2) of the BVI Act to include, subject to limited statutory exceptions, all lawful liabilities of a company) against the Company may assert such claim in the BVI Proceeding. Any such claim, subject to appropriate proof, may be allowed, thereby entitling such claimant to ratable payment of its claim from assets of the Company, subject to higher priority claims on the assets of the Company (such as administrative claims and expenses) and statutory priorities.

### IV. The BVI Proceeding is a "Foreign Proceeding" within the Meaning of Section 101(23) of the Bankruptcy Code

24. I am advised by United States counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> [A] collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Company are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

25. It is my opinion that the BVI Proceeding satisfies the above definition of "foreign proceeding." It is a judicial proceeding under the supervision of the BVI Court, in which the rights of creditors and contributories (i.e. equity holders) vis-à-vis the Company will be determined together. It was commenced pursuant to Part VI of the BVI Act, which is a law relating to the insolvency and winding-up of companies. The assets and affairs of the Company are subject to the full control and supervision of the Petitioners, as court officers, and of the BVI Court, for the purpose of liquidating the Company.

26. As such, it is my opinion that the BVI Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

### V. Each Petitioner is a "Foreign Representative" within the Meaning of Section 101(24) of the Bankruptcy Code

27. I am advised by United States counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

> A person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

9

28. It is my opinion that the Petitioners satisfy this definition. As officers of the BVI Court, the Petitioners are duly authorized and empowered by the BVI Court by reason of the February 15 Order to administer the liquidation of the Company's assets and affairs as well as to act as duly authorized representatives of the BVI Proceeding.

29. As such, it is my opinion that the Petitioners are "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code.

## VI.  BVI Law Relevant to the Determination of COMI

30. I am also advised by United States counsel that certain provisions of BVI law are relevant to the determination of the Company's center of main interests ("COMI") under section 1517 of the Bankruptcy Code.

31. As an initial matter, the Company was incorporated on March 10, 2006 as a Business Company under the BVI Business Companies Act 2004. There were no statutory restrictions on the ability of the Company to do business in the BVI.

32. Pursuant to section 245 of the BVI Business Companies Act 2004, a true and correct copy of which is attached hereto as Exhibit "B," the situs of shares of the Company is the BVI. Section 245 of the BVI Business Companies Act 2004 provides: "[f]or the purposes of determining matters relating to title and jurisdiction but not for the purposes of taxation, the situs of the ownership of shares, debt obligations or other securities of a company is in the Virgin Islands." Under this provision, the situs of the ownership of the shares in a BVI company is in the BVI.

33. Pursuant to section 175(1)(b) of the BVI Act, upon commencement of the BVI Proceeding, the directors and officers of the Company ceased to have any powers. Section 175 of the BVI Act provides that, upon commencement of a liquidation proceeding: "the directors and other officers of the company remain in office, but they cease to have any powers, functions

10

or duties other than those required or permitted by [Part VI of the BVI Act]." In practice and as a matter of law, save for a residual power to contest the liquidation, directors of a company cease to have all powers upon the appointment of liquidators of the company, and the entire management function thereafter vests in the liquidators (subject to any supervision of the BVI Court as may be ordered or provided for in the order of appointment). Furthermore, I understand from the Petitioners that, from about May 2012, the management of the Company has been conducted from the BVI.

## CONCLUSION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of June, 2013.

_____
Scott Cruickshank